C. A. HAMILTON, Appellee, v. L. B. IMES et al., Appellants, ST. CHARLES SAVINGS BANK, Intervenor, Appellant.

No. 41920.

JUNE 20, 1933.

REHEARING DENIED SEPTEMBER 29, 1933.

Percival & Wilkinson, for appellants.

C. E. Hamilton and C. A. Robbins, for appellee.

EVANS, J.—The material facts in the case are not greatly in dispute. Appellant's contention of fact is in substance as follows: Imes, the principal debtor in the foreclosure proceedings, was indebted to the intervenor, St. Charles Savings Bank, on a past-due note for more than $1,200. He owed an additional debt to the plaintiff herein for $450, which was secured by a chattel mortgage upon his personal property. He agreed with the St. Charles Savings Bank that he would hold a public sale of his mortgaged personal property, and that he would turn over to the said bank all the proceeds thereof over and above the amount of plaintiff's chattel mortgage. Pursuant to this agreement, he communicated the fact to the plaintiff's husband, and proceeded with arrangements for the sale. Frank Hamilton, a near relative of the plaintiff, was assistant cashier of the Winterset Savings Bank. He was engaged as clerk of the sale, and served in that capacity. He was advised by the defendant that the purpose of the sale was to pay off the chattel mortgage and to pay the balance of the proceeds to the St. Charles Savings Bank. The sale was had on March 22, 1932, and all the proceeds thereof came into the hands of Hamilton, as clerk. The full amount due on the chattel mortgage was paid to the plaintiff herein. Hamilton was directed by the defendant to pay the balance, amounting to $706, to the St. Charles Savings Bank.

Hamilton held this balance of proceeds as a deposit in his bank. While so holding the same, the garnishment notice was served on March 28, 1932. The defendant moved for a discharge of the garnishment, and the intervenor filed its petition of intervention. The intervenor contends that the agreement between it and the debtor-defendant amounted to an equitable oral assignment of the proceeds. It is further contended that, in so far as such proceeds in the hands of Hamilton might be deemed as a deposit in the Winterset Savings Bank, it was a special deposit, and that the garnishment was subject to the special terms of the deposit. It is further contended that the real custodian of the fund was Hamilton and not his bank. He was not garnished. Upon the record before us, we have occasion to consider only one of the grounds of intervention. Was the deposit *special?* If yea, then the garnishment was subordinate to the terms of the special contract of deposit. This subject has been frequently before us in a number of our precedents. First National Bank v. Propp, 198 Iowa 809, 200 N. W. 428, 36 A. L. R. 1353; Iowa Mutual Liability Co. v. De La Hunt, 197 Iowa 227, 196 N. W. 17; Hamm Brewing Co. v. Flagstad, 182 Iowa 826, 166 N. W. 289; Dolph v. Cross, 153 Iowa 289, 133 N. W. 669; Smith v. Sanborn State Bank, 147 Iowa 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336.

As already indicated, the proceeds of this sale came into the hands of Hamilton, as clerk thereof. Without dispute, he knew of the arrangement between the defendant Imes and the St. Charles Savings Bank. The defendant Imes testified:

"I saw Frank Hamilton about clerking the sale and told him what it was being held for, that the St. Charles Savings Bank wanted their money and that I had to hold the sale and sell the stuff to pay it, I told him to pay the St. Charles Bank after the chattel mortgage was paid.

"Q. Did you tell Frank Hamilton that the balance over and above the chattel mortgage was to go to the St. Charles Savings Bank? A. Yes, sir.

"Q. Did you tell him this before the sale was held? A. Yes, sir.

"I told Mr. Cassidy that I would hold the sale and pay off the chattel mortgage and the balance of it was to go to him. The day of the sale Frank Hamilton told me to come in and see him the next day.

"Q. What did Frank Hamilton then say about the proceeds of the sale over and above the chattel mortgage? A. He said all of the sale notes were not paid yet, but when they were we could send a draft to the St. Charles Savings Bank.

"Q. And you depended upon him to do that? A. Yes, sir."

Frank Hamilton testified:

"Q. Before the sale was held Mr. Imes told you that the proceeds was to be used to satisfy a chattel mortgage and the balance applied on his debt to the St. Charles Savings Bank? A. He told me he was having the sale to pay the St. Charles Savings Bank. Mr. Imes came in the next day after the sale.

"Q. What did he say when he came in? A. He brought some checks in of different items that had been paid to him, then he said, 'Just send the money to the St. Charles Savings Bank' and I said, 'It is not all collected.'

"Q. How is that? A. He said he wanted a draft and I said the money is not all collected yet.

"Q. You knew the next day after the sale the draft was to be sent to the St. Charles Savings Bank? A. According to his conversation.

"Q. When he came in the next day after the sale to get the draft you knew that he meant that the draft was to be issued by the Winterset Savings Bank to the St. Charles Savings Bank? A. Yes, sir.

"Q. You told Mr. Imes as soon as the sale was settled you would issue the draft? A. I told him to come in Saturday and we would settle up.

"Q. You told him to come in Saturday and you would issue the draft? A. Yes, sir.

"Q. And the draft you had reference to was a draft to the St. Charles Savings Bank, wasn't it? A. Yes, sir.

"Q. You knew at the time you clerked this sale the proceeds was to go to the St. Charles Savings Bank after the payment of the chattel mortgage and the expenses of the sale? A. Because Mr. Imes said that was his intentions, that is the way I knew it."

In addition to the foregoing testimony of Hamilton, the amended abstract of the appellee sets forth the following as a part of the record:

"By C. E. Hamilton.

"Q. Frank, L. B. Imes, at the time you talked to him the first time he came into the bank and employed you as an officer of the bank to clerk this sale, he never did tell you this fund was assigned, or was to be assigned, to the St. Charles Savings Bank, did he?

"A. No, he did not tell me it was assigned.

"Q. He just told you that the St. Charles Savings Bank was insisting on having their money that he owed them? A. Yes, sir.

"Q. Did he ever tell you to send a draft over there? A. No, that is just about the only place I disagree with him.

"Q. Did he ask you about sending a draft over? A. No, he said something about getting a draft, but I said it was not collected and I said you come in on Saturday afternoon and we *will fix things* up but he didn't come, he said he was busy and couldn't get in, that he was moving."

The foregoing interrogations were put by counsel for the plaintiff. On the issue of special deposit the foregoing presents no substantial conflict in the evidence. On the day following the sale, the defendant Imes brought to Hamilton, as clerk of the sale, certain checks that had been paid to himself by purchasers. This put into the hands of Hamilton the entire proceeds. They were put into his hands not for the purpose of a bank deposit, in the ordinary sense. No certificate was issued or asked. The duty assumed by Hamilton was to pay the same to the St. Charles Savings Bank. Upon this evidence the St. Charles Savings Bank would have a right to demand these proceeds from him or from his bank. Some stress is laid by appellee upon the fact that on Thursday Hamilton told Imes to come back Saturday and "we will fix things up". There appears to have been nothing to fix up except that Hamilton was to finish the collection of the items. The direction of the defendant Imes to Hamilton to pay over the proceeds to the St. Charles Savings Bank was in accord with, and in performance of, his agreement with said bank. If, therefore, the custody of the proceeds by Hamilton is to be deemed as a deposit in his bank, then it was a deposit for a special purpose as set forth in our several precedents above cited. The garnishment was subordinate to such purpose. It is essential to the plaintiff's recovery that the custody of the funds by Hamilton shall be deemed in some nature as a deposit in the bank, because only the bank was garnished. We hold, therefore, that the deposit, as such, was subject to the conditions and purposes imposed thereon by the defendant Imes in his conversation with Hamilton.

The order of the district court is accordingly reversed.

KINDIG, C. J., and ALBERT, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.