L. A. ANDREW, Receiver, Appellant, v. FARMERS STATE BANK of Garnavillo, Appellee.

IN RE CLAIM OF C. F. MURPHY, Appellant.

No. 42155.

DECEMBER 12, 1933.

REHEARING DENIED APRIL 5, 1934.

D. D. Murphy & Son, for appellants.

D. W. Meier, for appellee.

ALBERT, C. J.—In March, 1932, an action was pending in the Clayton county district court between the St. John's Evangelical Lutheran Church of Guttenberg, Iowa, and certain other persons. There seems to have been a factional fight within the church which was the basis of the aforesaid action. By stipulation and settlement the case was disposed of, on the basis that $3,000 was to be paid to the church, as follows: $1,000 on March 14, 1932, and

$2,000 within thirty days from that date. Three persons, Esslinger, Schroeder, and Siege, seem to have been the parties who accumulated the money for this payment, and, instead of depositing the same in one of the local banks, they went to the Farmers State Bank of Garnavillo (a neighboring town), with which none of them had had any previous relations. They informed the officers of the Garnavillo bank of the facts and circumstances relating to the lawsuit, and of the compromise and settlement and time the payments were to be made. They turned the $3,000 in currency over to the cashier of the Garnavillo bank, and immediately drew a check for $1,000 to make the first payment, which they did. They informed the officers of the bank that the purpose of making the deposit was to carry out the terms of the said settlement and provide a method of transmitting the said funds to the plaintiffs in the case so that they might have a record of such transmission.

On or about the 4th of April, 1932, the three named persons appeared at the bank and informed the officers that they would be in to get the money to pay off their obligation, and on that date they did appear and told the officers what they wanted the money for. They wanted it payable to C. F. Murphy so as to have a record that would show the payment had been made (Murphy was attorney for the church), and a cashier's check was issued by the bank for $2,000, payable to said Murphy. This was delivered to him and was presented for payment in due and ordinary course of business, and payment was refused because the bank had closed and was in the hands of the superintendent of banking for liquidation. It is conceded that there was sufficient money in the vaults of the bank that had passed into the hands of the receiver to pay said deposit, from the time of the deposit until the bank closed.

After the bank had gone into the hands of the receiver, Murphy filed a claim in said receivership, asking that the claim on the certificate of deposit be allowed as a preferred claim. The court denied the claim as a preferred claim, and allowed the same as a general deposit, and hence this appeal.

It is the claim of the appellant that the court erred in making the ruling it did because the deposit of the money with the bank was a special deposit for a specific purpose. A special deposit is distinguished from deposits for specific purposes, as will be seen by sections 306, 307 of the subject "Banks and Banking." 7 C. J. p. 630.

So far as called to our attention, the second phrase, "deposits

for specific purposes," has been applied by this court in cases where money was deposited with a bank for the use or benefit of a third party, and no case is called to our attention where such rule is applied to a case where the depositor is the beneficiary. See Townsend v. Athelstan Bank, 212 Iowa 1078, 237 N. W. 356; In re Receivership of Security Savings Bank of Perry, 205 Iowa 171, 217 N. W. 831; Hudspeth v. Union Trust & Savings Bank, 196 Iowa 706, 195 N. W. 378, 31 A. L. R. 466; Hamilton v. Imes, 216 Iowa 855, 249 N. W. 135.

The most that can be said for the evidence in this case is that it shows that these three parties deposited this money in this bank to be drawn at such a time as they saw fit. They had complete control of the same, and could have drawn it at any time. Apparently they were simply depositing it there for safe-keeping, to be used by them when the proper time came.

The first time we had a case like this before us was in the case of Officer v. Officer, 120 Iowa 389, 94 N. W. 947, 98 Am. St. Rep. 365, in which the deposit was made by the executor of an estate. We there said:

"He [the executor] alleges that he notified the bank that this was a special trust fund which should at all times be kept on hand and subject to the order of court, and that said Officer & Pusey [banking institution] had notice of the character of the funds. * * * The facts are not in dispute. * * * The deposit made in this case was not a special [or specific] one. The bank did not receive it upon a promise to keep the identical money and to return it to the executor. It was not specific, for the bank had the right to mix the funds with other money received by it, and obligated itself simply to honor and pay the executor's checks. It did not agree to hold the same for the parties entitled thereto, but it was at all times authorized to pay out the same on checks signed by the executor, and was not bound to see that the money received thereon went to those who were entitled to receive it."

In the case of Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24, in principle we had the exact situation that we have before us in the instant case. In that case a guardian deposited money in the Sac County State Bank. He told the officer of the bank that he had certain checks, and that they represented money belonging to his wards; that he was about to make settle-

ment with one of the wards who had attained majority; that he had resigned as guardian of that ward, and as soon as his resignation was accepted and his successor appointed he would make settlement with such successor, and he desired to deposit the funds for the purpose of effecting such settlements; that, as soon as they were effected, the money would be withdrawn for the purpose of paying the same over to the ward, who was of age, and to his successor as guardian of the other minor, respectively, and this would be done within a few days. The bank accepted and received said deposit, and issued a deposit slip therefor. Before this guardian withdrew the funds, the Sac County State Bank went into the hands of a receiver, and a claim was filed by the guardian asking a preference for the amount remaining in the bank at the time it closed.

In the Sac County State Bank case we reviewed all our authorities touching this question, and reached the conclusion that the guardian was not entitled to preference because the deposit thus made was a general deposit.

What we said in that case is decisive of this case. The district court here allowed the claim as a general deposit. Such action on the part of the court is in line with our previous decisions on this question.—Affirmed.

STEVENS, ANDERSON, MITCHELL, and CLAUSSEN, JJ., concur.