IN RE RECEIVERSHIP OF SECURITY SAVINGS BANK OF PERRY.

GEORGE J. DUGAN, Trustee, Appellant, v. SECURITY SAVINGS BANK OF PERRY et al., Appellees.

FEBRUARY 7, 1928.

*George J. Dugan* and *George H. Sackett*, for appellant.

172

*Ben J. Gibson*, Attorney-general, and *Harry Wifvat*, for appellees.

. Per Curiam.—It appears without dispute that the appellant, George J. Dugan, was the attorney for the administrator with the will annexed of the estate of John Charles White, and was also an agent or representative of the Western Surety Company. It also appears that it was in contemplation that a loan was to be made upon the property of the White estate, to prevent the sale of real estate to pay debts. In the negotiations for the loan, it became necessary for the representatives of the estate to furnish a bond. The bond appears to have been executed by Dugan, as the representative of the Western Surety Company. Before doing so, however, he required that the payment of the premium therefor be secured. This was done, after some adjustment of the amount by the deposit by the heirs of the White estate of the amount of the premium, $314.53, with the Security Savings Bank, for which certificate of deposit or cashier's check was issued. This was held by Dugan, pending the completion of the loan and the delivery of the bond.

On the day that the bank closed its doors, but before that event, and while it was still transacting business as a going concern, Dugan, through a representative, demanded payment of the $314.53. His representative was induced by the officers of the bank to leave the amount in the bank on special deposit, and to accept the following certificate:

"Security Savings Bank
"Perry, Iowa, Jan. 24, 1925
"No. 5214.
"Geo. Dugan, Trustee, has deposited in this bank
Three Hundred Fourteen and 53-100.......................
.....................................Dollars $314.53
"Payable to the order of himself as trustee in current funds on the return of this certificate properly endorsed. Special deposit as per notation on back.
"H. N. Graves, Cashier"

On the back of the instrument appears the following:

"This amount of $314.53 is a special deposit and paid into this bank for the express purpose of paying the premium of a bond of Western Surety Co. to Annis & Rohling in John White estate and said funds are a special deposit for said purpose and preferred claim for the above amount.

"Security Savings Bank,

"By H. N. Graves

"Cashier."

It also appears, as shown by the books of the bank, that there was cash on hand in the bank on that day in the sum of $1,318.53; and there is no dispute but that this amount came into the hands of the receiver.

I. Although it appears without dispute that the officers of the bank were familiar with the entire transaction, and knew that the purpose of the original deposit was to pay the premium on the bond, it is clear that the bank, prior to the issuance of the instrument above set out, assumed no duty with respect to the deposit other than to pay the amount thereof to Dugan, or on his order, on return of the certificate or cashier's check. It was, prior to that time, a general deposit, and the relation of the bank was not changed by the fact, or knowledge on the part of the officers of the bank, that Dugan was holding the money as trustee. *Officer v. Officer & Pusey*, 120 Iowa 389.

II. To entitle the appellant to a preference, it must appear (1) that the bank held the money as trustee, and (2) that the funds of the bank were thereby augmented, and so passed into the hands of the receiver.

It is a well established doctrine that if, from the nature of the transaction, it appears that the relation of a claimant and a bank is that of principal and agent, the money of the claimant is held by the bank as trustee, and the claimant is entitled to a preference, on the insolvency of the bank, upon a proper tracing of the money into the hands of the receiver. *Nurse v. Satterlee*, 81 Iowa 491; *Whitcomb v. Carpenter*, 134 Iowa 227; *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608.

It is also well settled that a special deposit, or a deposit for a specific purpose, creates a trust relation, as between the depositor and the bank, which will entitle him to a preference.

*Officer v. Officer & Pusey*, supra; *Hudspeth v. Union Tr. & Sav. Bank*, 196 Iowa 706 (31 A. L. R. 466), and cases cited in note in the latter publication. See, also, 7 Corpus Juris 631, 751.

Here the character of the deposit as special was recognized, the purpose for which the money was to be used was designated, and the right of the depositor to a preference was secured by the express terms of the certificate issued by the bank, the written contract between the parties. The basic fact upon which a preference must be predicated,—the existence of a relation of trust between the bank and the claimant,—could not be more definitely and certainly established.

III. The question remains whether the funds in the hands of the bank were augmented by the transaction. It cannot be doubted that, if the appellant had passed the cash over the bank's counter, and received the certificate in question, and the bank had mingled the amount with its funds, there would have been such an augmentation of the latter that a right to enforce a preference would have existed. Did the fact that the amount was already on general deposit in the bank, and represented by a certificate of deposit or a cashier's check, which was surrendered at the time the certificate in question was issued, work such a change in the situation as to require us to say there was no augmentation of the funds in the hands of the bank? The query is answered by the doctrine laid down in *Messenger v. Carroll Tr. & Sav. Bank*, supra.

In that case, as in this, two questions were presented: the one having to do with the relation of the parties in respect to the fund, and the other, with whether the funds of the bank had been augmented. The claimant had sent to the bank for collection a sight draft drawn on one who had a deposit in the bank. The sight draft was paid to the bank by a check on the depositor's account at the bank. The bank undertook to remit the amount so collected by its draft on its Chicago correspondent, but the draft was not paid because of the failure of the drawer bank. It was held that the relation between the claimant and the bank was that of principal and agent. This resolved the first question in favor of the claimant.

In respect to the second, and to the payment of the claimant's sight draft to the bank by a check on the drawee's account at the bank, we said:

''That this method of collection was the full equivalent of the payment of money by the Swaney Company [the drawee], and served to the augmentation of the assets of the bank in precisely the same manner as the delivery of currency would have done, is held in the following authorities * * * [citing cases]. We deem it clear that the net result of the transaction of payment by the Swaney Company and the receipt thereof by the collecting bank was the same as though the Swaney Company had drawn the currency into its own hands by means of check, and had thereupon delivered the same to the collecting bank in payment of the sight draft. Such is the holding of the cited cases.''

We perceive no distinction in principle at this point between that case and this. The effect of what was here done was that the original certificate of deposit was paid, and the amount was placed on special deposit under the certificate in question. The actual payment of the original certificate in cash would have reduced to that extent the funds of the bank, and also its liability to its general depositors. The receipt of the amount in cash on special deposit would, when it was mingled with the funds of the bank, have served to augment the funds in its hands; but general depositors would thereby acquire no right thereto, as against the appellant, and the payment of the amount to the appellant would not injure or prejudice their rights. The same result was brought about by what was done. The bank's liability to its general depositors was reduced by the surrender of the certificate, and the amount due on it became the money of appellant. Instead of actually receiving the cash, appellant took the bank's obligation to hold it on special deposit. The funds in the hands of the bank were augmented to that extent.

It is true, in the *Messenger* case the bank held the money collected as agent, and its duty was to remit; and this may be said to affect not merely the relation of the parties, but the question of augmentation of funds as well; for, if the money belonged to the bank's principal, it had no right to mingle it with its own funds, to the injury of its principal, and the funds in its hands were thereby augmented. But the fact of agency presented no distinction in principle. Here, the bank held the amount as a special deposit, and for a specific purpose, all of which it recognized by its express contract. Its duty under its

contract was to hold it, not as its own, but as the money of the special depositor, and to return it on demand. It could not prejudice the rights of the special depositor by mingling it with its own funds. The duty in one case was no less than in the other. In the *Messenger* case the money belonged to the bank's principal. Here it belonged to the special depositor. In neither case did the relation of the debtor and creditor exist; in neither did the amount so held belong to the bank; and in both the funds in the hands of the bank were augmented, but without enlarging the resources to which general depositors had a right to look; and the amount could have been withdrawn without prejudice to their rights.

One factor in the sufficient tracing of a trust fund is whether it can be taken from the general funds of the insolvent without impairing the rights of general creditors. Since a fund on special deposit belonged, not to the bank, but to the special depositor, and since it served to augment the funds in the hands of the bank, and, on insolvency, the amount of cash in its hands that came into the possession of the receiver was greater than the amount of the special deposit, its withdrawal could not prejudice the rights of general depositors or other general creditors.

The appellant was entitled to have his claim allowed as a preferred claim, and the judgment is reversed.—*Reversed.*