NELL M. DANIEL et al., Plaintiffs, Appellees, v. HOWARD C. BEST et al., Defendants; RUTH YOUNG KEITH et al., Defendants, Appellants.

No. 43699.

MAY 3, 1938.

REHEARING DENIED NOVEMBER 25, 1938.

Maurice H. Bordewick, S. W. Livingston, and Bardens & Melberg, for appellants, Ruth Young Keith and others.

Jensen & Wieben, Tobin, Tobin & Tobin, Swisher, Swisher & Cohrt, Paul H. Cunningham, and Willard F. Russell, for appellees.

DONEGAN, J.—As this case comes to us on appeal it involves the liability of the estate of John Young, deceased, and of property of his estate in the hands of the defendants, Ruth Young Keith, Agnes Young Sherrick, and Grace Young Pike, to contribute to the payment of the indebtedness of two private banks in which he owned an interest during his lifetime. To a better understanding of the issues involved it seems advisable to set out a statement of facts upon which such liability is based.

In 1890 the Traer State Bank was organized, with its place of business at Traer, Tama county, Iowa. John Young was one of its organizers and the owner of five shares of its stock. His holdings of stock were increased thereafter, and at the time of his death he was the owner of 47½ shares, the last addition to his stock having been acquired in 1925. The record does not show when John Young first became a director of this bank, but it does show that he was a director from July 1903 to 1911, when he became president, and that, from that time, he continued as director and president until his death on the 7th day of February, 1927. At a regular meeting of the stockholders in January 1904, it was voted that $3,000 of the surplus of the Traer State Bank be appropriated to the organization of a private bank at

the town of Buckingham, Tama county, Iowa, to be known as the Bank of Buckingham. The plan for the organization of this bank provided that the $3,000 appropriated from the surplus of the Traer State Bank should be placed in the hands of three trustees; that these trustees should be selected by the directors of the Traer State Bank from their own number; and that the stock of the Bank of Buckingham would be owned by the stockholders of the Traer State Bank. The business of the Bank of Buckingham was profitable and, as the result of accumulations from its own profits and additional appropriations from the Traer State Bank, its capital, in January 1907, had increased to $10,000. In January 1908, the stockholders of the Traer State Bank voted to establish another private bank at the town of Voorhies in Black Hawk county, and $8,000 of the surplus accumulated in the Traer State Bank and the Bank of Buckingham was directed to be used for that purpose. By January 1909, another $2,000 was turned over to this new bank, thereby increasing its capital to $10,000. At all times thereafter the capital of each of these banks was $10,000. Both of these private banks were conducted in identically the same manner. The property and assets of each bank were held and managed by a board of three trustees, who were directors of the Traer State Bank selected by the directors of that bank. Beginning some time later, the three trustees were always the president, the vice president and the cashier of the Traer State Bank. The business of each of the private banks was conducted independently of the business of the other, and of the Traer State Bank. Separate accounts were kept for each bank and different persons employed in conducting the business of each. All three banks continued to operate, to show profits, and to declare dividends over a period of many years and until some time before they were finally closed on the 2d day of November, 1931.

No separate certificate of stock or other writing indicating the extent of the interest owned by each stockholder of the State Bank of Traer in either of the two private banks was ever issued. While the plan of organization adopted by the stockholders of the Traer State Bank, in January 1904, does not expressly so state, there is sufficient in the express provisions of the plan, when considered in connection with the actual conduct of the parties to the plan, in carrying it out thereafter, to indicate that it was the intention and understanding that each

stockholder in the Traer State Bank was the owner of an interest in the Bank of Buckingham, and later in the Bank of Voorhies, which bore the same ratio to the business and assets of each of these two banks that the number of shares of stock held by such stockholder in the Traer State Bank bore to the total number of the shares of capital stock of said bank. When dividends were paid by the Bank of Buckingham and the Farmers Bank of Voorhies, each stockholder in the Traer State Bank received the same amount of dividend that he would have received had the total amount distributed in dividends been paid by the Traer State Bank as dividends of the Traer State Bank. At no time during the entire existence of the Bank of Buckingham and the Farmers Bank of Voorhies was any separate written instrument executed or delivered to evidence the transfer or assignment of the interest and ownership held by any stockholder of the Traer State Bank in the property and assets of the Bank of Buckingham or the Farmers Bank of Voorhies. During the period intervening between the establishment of these two banks and the death of John Young, there was a change of ownership in more than two-thirds of the 600 shares of stock of the Traer State Bank resulting from the death of stockholders in that bank. In such cases the stock of the Traer State Bank was transferred either by will or inheritance, or by sale from the estate of the deceased owner to new owners, and the transfer evidenced by assignment and issuance of new certificates. In none of these cases was any written instrument executed to transfer the interest of the deceased in the private banks, nor does any reference whatever appear in the probate proceedings in regard to the interest of such deceased stockholder of the Traer State Bank in the property and assets of the Bank of Buckingham and the Farmers Bank of Voorhies. In every instance, however, where, upon the death of a stockholder of the Traer State Bank, the stock of such deceased person in the Traer State Bank passed, by will or inheritance, to his beneficiaries or heirs, or by sale from his estate to new owners, all the parties involved in these changes of ownership of such stock of the Traer State Bank appear always to have understood that the ownership of the interest of the deceased in the private banks followed the ownership of the stock of the Traer State Bank. Moreover, during all the years from the time John Young became president of the Traer State Bank until his death he was one of the trustees in charge

of the private banks. From 1919 to 1931, inclusive, separate statements of the Traer State Bank and of each of the private banks were made to the assessor for taxation purposes, the statements for the years 1919 to 1926 being signed and sworn to by John Young. The statements of the Traer State Bank and of the Bank of Buckingham were filed in the office of the auditor of Tama county and the statement of the Farmers Bank of Voorhies was filed in the auditor's office of Black Hawk county. In each of these yearly statements the owners of the Bank of Buckingham and the Farmers Bank of Voorhies were the same as the stockholders of the Traer State Bank, and the extent of their ownership in the private banks was in the same ratio as their holdings in the stock of the Traer State Bank. At different times combined statements of the Traer State Bank and the two private banks were printed and distributed among the stockholders of the Traer State Bank and the public generally. These statements listed the stockholders of the Traer State Bank and stated that the Bank of Buckingham and the Farmers Bank of Voorhies were partnership banks, and that the stockholders or partners were individually responsible for the whole liability of the two banks. In connection with the use of the trade names, ''Bank of Buckingham'' and ''Farmers Bank of Voorhies'', a verified statement was filed by the cashier of the Bank of Buckingham in the office of the recorder of Tama county, and a similar verified statement was filed by the cashier of the Farmers Bank of Voorhies in the office of the recorder of Black Hawk county, and each of these statements contained the names of the owners of the respective bank, including the name of John Young.

When John Young died on February 7, 1927, he left a will which, in addition to providing certain specific legacies, left the residue of his estate to his children therein named, among whom were included Agnes Young Sherrick, Ruth Young Keith, and Grace Young Pike, who are defendants and appellants in the instant action. This will was duly admitted to probate, Robert P. Young and William E. Young were appointed executors, and notice of appointment duly given. These executors filed their inventory, which listed 47½ shares of stock in the Traer State Bank but did not list or make any reference to the interest of John Young, deceased, in the property and assets of the Bank of Buckingham or the Farmers Bank of Voorhies. The property

listed in the inventory was later appraised, both by the appraisers appointed by the court and by the inheritance tax appraisers. A petition was filed for authority to sell personal property, notice of sale given, and a report of sale made, all of which purported to itemize the property involved, but in none of them, nor in the order approving the sale, was any reference made to any interest in either of the two private banks. In November 1930, a petition was filed asking for a blanket order authorizing the executors to transfer the title of other personal assets of the estate, which they alleged had no cash value, to R. P. Young, as trustee, for the benefit of the residuary legatees under the will; but neither this petition, which set out a list of the assets alleged to have no cash value, nor the order approving it, contained any mention of any interest in the Bank of Buckingham or the Farmers Bank of Voorhies. In the final report filed July 8, 1931, the statement is made that "there was included in the assets of decedent's estate, certain bank stock and certain interests in two private banks," etc., which, because of the depressed times following the death of John Young, the executors were unable to convert into money readily to carry out the terms of the will, and that these bank stocks and other classes of property above described were sold under order of the court by the executors and sale approved. Aside from this reference to "certain interests in two private banks", there is nowhere in all the probate proceedings in the estate of John Young, deceased, anything which can have any reference whatever to the interest owned by John Young at the time of his death in the Bank of Buckingham or the Farmers Bank of Voorhies. This final report was approved and distribution ordered. Thereafter a supplemental final report, showing distribution, was filed and, by an order entered on the 3d day of August, 1931, this report was approved, the executors discharged, and the estate closed.

On November 2, 1931, the Traer State Bank closed its doors and went into the hands of the superintendent of banking of the state of Iowa, as receiver, and on the same day the Bank of Buckingham and the Farmers Bank of Voorhies also closed their doors and Harry W. Jennings was appointed receiver. Following his appointment as such receiver, Harry W. Jennings began an action against the plaintiffs and certain of the defendants in the instant action, alleging their personal liability for

the deposit and other obligations of these private banks, and on June 10, 1932, a judgment in favor of said receiver was entered in that action in the sum of $137,513.90, with interest and costs. Thereafter, the plaintiffs in the instant action made settlement with Jennings, receiver, and purchased this judgment from him for the sum of $86,382.65. In January 1934, the plaintiffs herein instituted the instant action in equity alleging the liability of the defendants as owners of interests in said two private banks; asking for an accounting, to determine the amount of contribution to be made by each of them; and asking for judgment and decree in rem against real estate derived by the individual defendants involved in this appeal from the estate of John Young, deceased, for the sums thus found.

When this action was instituted the estate of John Young, deceased, was not made a party defendant. The original petition alleged, in substance, that each of the defendants, Keith, Pike, and Sherrick, was the owner of six shares of stock of the Traer State Bank; that, because of such ownership of said stock, each of them was also owner of an interest in the Bank of Buckingham and the Farmers Bank of Voorhies; that, as owners of such interests in the latter banks, they were liable for the indebtedness of said banks to the same extent as plaintiffs; and that they should be held to contribute their equitable share to the payment made by plaintiffs in settlement of the judgment obtained by the receiver. The defendants, Agnes Young Sherrick, Grace Young Pike, and Ruth Young Keith, filed separate but identical answers. Thereafter the plaintiffs amended the petition, alleging that it could not be definitely ascertained from the files of the estate of John Young, deceased, whether the said defendants, or any of them, actually received or became the owners of any part of decedent's shares or units in said private banks; that such shares or units, if any, as had not been received by the defendants, or any of them, are still in the estate of John Young, deceased; and asked that Maurice H. Bordewick, the duly appointed and qualified administrator *de bonis non* with the will annexed of the estate of John Young, deceased, be made a party defendant, and that, if any part of the interest owned by John Young, deceased, in said private banks be found to be in his estate, an accounting be had against the estate and the relief prayed be granted against the estate. The defendants filed a motion to strike this amendment to the peti-

tion, which was overruled. A second amendment to the petition was later filed, and a motion to strike this amendment was likewise filed and overruled. Answer was filed by the defendants to the petition as amended, and later an amended and substituted answer was filed. The case proceeded to trial and, at the conclusion of plaintiffs' evidence, defendants filed a motion to dismiss, which was overruled in the final decree. At the conclusion of all the evidence the plaintiffs filed a third amendment to petition to conform to the evidence. The defendants filed a motion to strike this third amendment to the petition, which was overruled in the final decree. Defendants also filed an amendment to answer to conform to the proof.

Following the trial and submission of the case, the court entered a decree, overruling the motions to strike and to dismiss above referred to, and finding that the defendants, Ruth Young Keith, Agnes Young Sherrick, and Grace Young Pike, were not shown to have received or accepted any shares or interests in the Bank of Buckingham and the Farmers Bank of Voorhies from the estate of their deceased father, John Young, and were not individually liable; that the interests which would have gone to said defendants, Ruth Young Keith, Agnes Young Sherrick, and Grace Young Pike, from the estate of their father, John Young, deceased, remained at all times in the estate of John Young, deceased; and that the estate of John Young, deceased, was, therefore, liable for contribution. The amount of such contribution was not fixed, but was continued for determination at a later hearing. From this judgment and decree of the trial court, and from all adverse rulings, the defendants, Ruth Young Keith, Grace Young Pike, and Agnes Young Sherrick, and Maurice H. Bordewick, as administrator *de bonis non* with the will annexed of the estate of John Young, deceased, appeal.

■■■ I. Appellants allege error on the part of the trial court in overruling the defendants' motions to strike the first amendment to the petition, the second amendment to petition, and the third amendment to petition. The theory of each of these motions was that the original petition based plaintiffs' cause of action on the liability of the three individual defendants and appellants, Ruth Young Keith, Agnes Young Sherrick, and Grace Young Pike, as residuary beneficiaries under the will of John Young, deceased, and made no claim against the estate of John Young, deceased; that the claim of liability on the part

of said individual defendants, as owners of interests in the said private banks, is inconsistent with the ownership of such interests in said private banks by the estate of John Young, deceased; and that, by bringing their action against the said three individual defendants and claiming liability on the ground that they were the owners of such interests in said private banks, the plaintiffs made an election of remedies and cannot be permitted thereafter to allege that the liability growing out of the ownership of the interests in said private banks is that of the estate. We are unable to agree with the appellants in this contention, because we do not see that there was any change in the remedy under which plaintiffs sought relief in their original petition. As the individual defendants here involved are nonresidents, no personal service was made on them in this state, in the action brought by the receiver, and there was no personal judgment against them in that case. This action was brought to compel the individual defendants involved in this appeal, as well as other defendants in this action, to contribute their equitable share toward the payment made by plaintiffs in settlement of the judgment which had been obtained by the receiver. The obligation to make such contribution was based upon the allegation that the defendants were owners of interests in the Bank of Buckingham and the Farmers Bank of Voorhies; that the three individual defendants here involved derived their ownership of their interests in these private banks under the will of their father, John Young, deceased, each of them having received one-eighth of the interest in such private banks which was owned by John Young at the time of his death; that ownership of such interests in these banks carried with it liability on the part of each owner for the debts of the banks; and attachment was levied on certain real estate interests of the defendants also derived under the will of John Young, deceased, against which the petition asked for a judgment in rem. The individual defendants here involved had filed answers denying their ownership of the interests in the private banks upon which liability was based. The amendments to the petition, to which the motions of the defendants were directed alleged, in substance, that, if any part of the interest owned by John Young, deceased, in said private banks had not passed into the hands of the individual defendants, as claimed by them under their denials, such parts of said interest owned by John Young, as would have gone

to these defendants, were still in the estate of John Young, deceased, and asked that, if this condition be established, the plaintiffs have relief against the estate of John Young, deceased, as to the interest in the private banks which had not passed to the individual defendants. While a new party was made defendant and alternative relief asked against the new party or the individual defendants, as the evidence might reveal their ownership respectively, there was no change in the nature of the relief asked which would amount to an election of inconsistent remedies. As said in 20 C. J., p. 21:

"An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because of such error, does not constitute a conclusive election, and does not preclude him from thereafter prosecuting an action based upon an inconsistent remedial right."

See, also, Zimmerman v. Robinson & Co., 128 Iowa 72, 102 N. W. 814, 5 Ann. Cas. 960; Lemon v. Sigourney Savings Bank, 131 Iowa 79, 108 N. W. 104; Wells v. Western Union Tel. Co., 144 Iowa 605, 123 N. W. 371, 24 L. R. A. (N. S.) 1045, 138 Am. St. Rep. 317; Asher v. Pegg, 146 Iowa 541, 123 N. W. 739, 30 L. R. A. (N. S.) 890; Green v. Phoenix Ins. Co., 218 Iowa 1131, 253 N. W. 36.

■■■ II. Appellants next contend that the trial court erred in holding that the estate of John Young, deceased, was liable for the debts of the Bank of Buckingham and the Farmers Bank of Voorhies contracted after his death. As we understand their position as to the proposition here advanced, they do not deny that John Young was individually liable for the debts of these two banks during his lifetime, or that his estate would be liable for the debts of these two banks which existed at the time of his death; but they contend that, whether the liability sought to be enforced in this action be based on the theory of partnership or joint adventure or joint stock company, it cannot be extended to include debts of said banks which came into existence after his death. Because the rules of law as to the liability of partners under the usual and ordinary partnership agreements are of

general application to joint adventures and joint stock companies; because the relationship out of which the liability of partners arises can be created only by contract; and because, as they claim, there is no evidence that the owners of the two private banks ever made any agreement among themselves that their liability for the debts of these banks was different from or greater than the liability of the partners under the usual and ordinary partnership agreement, they contend that the estate of John Young is not liable for and cannot be compelled to contribute to the payment of the indebtedness of these two banks at the time they quit business on November 2, 1931, almost four years after his death. If the agreement among the stockholders of the Traer State Bank, under which they were the owners and conducted the business of the two private banks, imposed no greater liability than that of partners under the usual and ordinary partnership agreement, there might be much merit in appellants' contention. But the appellees contend that the real arrangement and understanding among the stockholders of the Traer State Bank in regard to their ownership of the two private banks and liability for the debts thereof must be determined from all the facts and circumstances connected with their history from the time of their establishment until they were closed, and that, when this is done, it clearly appears that such arrangement and understanding constitute much more than a simple partnership agreement imposing only the ordinary liability of partners under such agreement. These counter contentions of the parties at this point present what we consider the crucial matter to be determined in this case, to which we now direct our attention.

While it is true that, as among the parties themselves, the relationship which constitutes a partnership can be created only by contract, it is equally true that such contract need not be written or even stated orally in express terms. As said in 47 C. J. p. 649:

"No particular form is necessary for the contract of partnership. Unless within the statute of frauds, the contract of partnership may be oral or written, express or implied from the conduct of the parties. It may be implied despite the language of their contract. A partnership may be created by the same instrument that creates another relation."

Whether, as among themselves, persons have agreed to the relationship which makes them partners only, or whether the relationship does not include all or includes more than the powers and obligations ordinarily found in a partnership, is likewise determined not only from the express language of a contract, but from the conduct of the parties as well. 47 C. J. pp. 656 and 657. In this case, therefore, while the parties might be said to have formed a partnership, because, in statements and reports made by them, they said that the two private banks were partnership banks and that the individuals owning same were personally liable, it does not follow necessarily that the arrangement between these parties was no more than a simple partnership. It is the contention of the appellees in this case that, not only the express terms of the plan of organization for these two private banks, but the subsequent conduct of the owners is such as to evidence an intention and understanding among them that the business conducted would not cease and the partnership would not be dissolved upon the sale of his interest or the death of a member; that it was their understanding and intention that these banks should continue as going concerns; that the owners of these banks would always be the same as the owners of the stock in the Traer State Bank; that when a change of ownership occurred in the stock of the Traer State Bank there would be a corresponding change in the ownership of the property and assets of the two private banks; and that the owners of the property and assets of the two private banks would at all times be responsible for the debts of these banks during the time they were owners, and until their ownership ceased and their interests passed into the hands of other persons. That the parties who were the owners of the stock in the Traer State Bank could make such an arrangement among themselves, and could bind themselves and their successors by such an arrangement, is, we think, well recognized in the law; and that such was, in substance, the agreement and understanding of the owners of stock in the Traer State Bank, who were likewise the owners of the two private banks, is, we, think, well established by the evidence in this case.

The trial court's findings of fact and conclusions of law, as to this phase of the case, express our own thought, and we take the liberty of quoting therefrom the following:

"And yet the institution was more than an ordinary partnership—such as would in law terminate on death or withdrawal of a member. In the first place, in an ordinary partnership each partner has a full voice in the management, with the right to bind his firm on contract and perhaps otherwise. Not so here, for the bank was to be managed by a board of three Trustees, consisting of the officers of the Traer State Bank. Secondly, the organizers plainly had in mind a continuing institution, one possessing the right of perpetual succession, regardless of change in membership—at least as long as the Traer State Bank had stockholders. 'The Stock of Buckingham is owned by the Stockholders of the Traer State Bank.' From this it cannot be assumed that the organizers were speaking merely *in praesenti*—limiting ownership for all time to come to the then existing stockholders of the Traer State Bank. They did not have in mind that the existing organization was to end, and creation of a new entity required, every time a shareholder died or transferred his interest. They were building for the future as well as for the present. They must have contemplated that at all times, as long as the banks continued to exist, the stockholders of the Traer State Bank should be the owners of the Bank of Buckingham; that whenever a stranger acquired stock in the Traer State Bank—whether through purchase, bequest or succession—he would automatically become the owner of a corresponding interest in the Bank of Buckingham; that he would through the acquisition of the former stock also acquire the prior owner's interest in the private bank. In other words, the plan was that transfer of stock in the Traer State Bank would *ipso facto* transfer a corresponding interest in the Bank of Buckingham. No separate certificates were issued to represent the shares in the private bank. The owners saw no need of such, for as between and among themselves their certificates in the Traer State Bank also represented their shares in the private bank. A certificate of stock is not the stock itself, but merely the evidence thereof. * * *

"This Court finds as a matter of law and fact, under the plan of organization of said private banks and their method of operation, and from the interpretation the owners themselves placed on their said organizations through their method of operation, that said banks *were continuous legal entities, not terminated by the death of a member or shareholder*; that they

were formed so as to *have perpetual succession,* at least as long as the Traer State Bank might continue to exist, or until some other plan of ownership might be devised; that *on the death of a member or shareholder, his shares or interest passed to his estate or its representatives, without any change in the rights or liabilities pertaining to the ownership thereof; that the plan and method of operation of said banks, and every element thereof, automatically became part of the contract of every member or shareholder on his becoming such.* (Italics ours.) These were the clear and unambiguous terms to which all shareholders in the private banks bound themselves, and of course all shareholders were at all times responsible for the obligations of the two banks.''

■■■ III. Appellants further complain of the error of the trial court in not holding the estate of John Young free from liability for the debts of the Bank of Buckingham and the Farmers Bank of Voorhies, because each of these banks was an illegal enterprise and the participants in an illegal enterprise cannot recover from one another. The argument in support of this contention is exceedingly brief and admits that, if the two banks were private banks, they would not be subject to the provisions of section 9151 of the Code making it unlawful for any individual, partnership, or unincorporated association to use a name containing the word ''bank'', because they were established prior to the enactment of this statute and come within the express exceptions set out in section 9153 of the Code. Appellants contend, however, that, if these two banks be held to be branch banks, they were illegal enterprises under the provisions of section 9258-b1. The trial court clearly found that these two banks were not branch banks and its finding is fully supported by the evidence. The plan of organization of the Bank of Buckingham expressly stated that the laws concerning state banks did not permit of branch banks, and the plan submitted was clearly for an organization which would not be a branch of the existing Traer State Bank. The same plan was followed in the organization of the Farmers Bank of Voorhies. There was clearly no intention on the part of the persons interested in these two banks to organize either of them as a branch bank, and their subsequent conduct shows that these banks were not conducted as branch banks.

██ IV. Appellants allege error on the part of the trial court in not holding that the claim of plaintiffs against the estate of John Young is barred by the general statute of limitations, Code 1935, §11007, and by the special statute, Code 1935, §11972, requiring the filing of claims against an estate within one year of giving of notice of appointment by the executors. Under the findings of the trial court, however, as to the nature of the contract under which these two private banks were organized and conducted, and the liabilities of the owners arising therefrom, these organizations were not dissolved upon the death of each owner and the passing of the interest owned by him therein to his estate or to his successors. Upon the death of John Young, and until the interest which he had owned in these two banks had passed to the persons entitled thereto in distribution of his estate, such ownership was in the estate, and the business of these organizations continued to be conducted with the same ownership and liability on the part of the estate that would have been on John Young had he continued to live. When these banks were closed and the receiver appointed, the estate of John Young was liable for all the indebtedness of the two banks to the same extent that he would have been liable if living. As the banks were closed and the receiver appointed in November 1931; and, as the judgment in the action by the receiver was obtained in June 1932; as that judgment was settled and purchased by the plaintiffs in November 1933; and, as the instant action was commenced in January 1934, all within five years of the closing of the banks and the appointment of the receiver, this action was not barred by the general statute of limitation.

As to the special statute of limitation requiring a claim to be filed against the estate within one year from the giving of notice of their appointment by the executors, we think the necessity of filing such a claim did not exist in this case, because the liability here involved was not based on personal indebtedness of John Young existing at the time of his death, but was based on an indebtedness of his estate growing out of the ownership by his estate of the interest in the two banks, which was owned by John Young up to the time of his death, which passed into the estate upon his death, and which remained in the estate at all times thereafter. But, even if this were not true, we think the facts and circumstances in this case are such that the claim

here involved should not be barred because not filed in the form of a claim against the estate, within the one-year period from the giving of notice by the executors of their appointment. The whole course of conduct of the owners of these two banks from the time of their organization until they were finally closed showed that it was not their intention that, upon the death of an owner of an interest therein, a claim should be filed against his estate based on his individual liability for the debts of these banks, and in no single instance was such a claim ever filed. Until these banks were closed and the receiver appointed, there was no reason why any of the other owners of interests in these banks, or the creditors of these banks, would know that a different course of conduct would be insisted on when John Young died and his interests in these two banks passed into his estate. In any event, we think the circumstances were so unusual as to constitute peculiar circumstances within the contemplation of the statute, and that they are such as to entitle the plaintiffs to equitable relief against the bar of the statute.

V. Other grounds are set out in appellants' brief and argument upon which it is argued that the decree and judgment of the trial court should be reversed. We have examined these remaining grounds but, in view of the nature of the contract which we think the trial court properly found to exist among the owners of the Bank of Buckingham and the Farmers Bank of Voorhies, and under which such original owners, their estates and their successors in ownership became liable for the indebtedness of these two banks, we do not deem it necessary to prolong this opinion by further discussion.

We find no reason for reversing the decree and rulings of the trial court, and the case is, therefore, affirmed.—Affirmed.

KINTZINGER, HAMILTON, SAGER, and MILLER, JJ., concur.

STIGER, C. J., takes no part.