Nell M. Daniel et al., Appellees, v. Howard C. Best et al; Ruth Young Keith et al., Appellants.

No. 45807.

·Augusт 11, 1942.

Rehearing Denied November 20, 1942.

S. W. Livingston, of Washington, Bardens & Melburg, of Monmouth, Illinois, and Kindig, Faville, Kindig & Beebe, of Sioux City, for appellants.

Jensen & Wieben, of Dysart,·Tobin, Tobin & Tobin, of Vinton, Swisher, Swisher & Cohrt, of Waterloo, Paul H. Cunningham, of Des Moines, and Willard F. Russell, of Toledo, for appellees.

OLIVER, J.—This is an action for accounting and contribution between certain shareholders, or co-owners, of two private banks. ˙The banks became insolvent, and in a suit brought by the receiver against most of the individual shareholders judgment was rendered against each for the total amount of the unpaid liabilities. Later, some of these shareholders ·settled the liability of the shareholders and brought this action against the shareholders who had not participated in said settlement to require them to contribute an. equitable share toward the amount paid for said settlement and attendant expense. From a judgment and decree for plaintiff in the sum of $16,933.54 against the estate of John Young, deceased, and its administrator, and against certain property and assets of said estate, three of the residuary legatees and ·beneficiaries under the will of said decedent have appealed.

There were two distinct phases and trials of the case. In

the first trial, the court decreed the estate of John Young was liable to contribute, fixed the basis for determining the amount and the extent of the liability, and continued the cause for an accounting upon said issue. The decree was affirmed upon appeal to this court. Daniel v. Best, 224 Iowa 1348, 279 N. W. 374. That opinion sets out the factual background of the case. After said affirmance, the second or accounting phase of the case was tried and the judgment and decree rendered from which this appeal is prosecuted.

At the time of the death of John Young, he owned an undivided 7 11/12 per cent interest in the two unincorporated banks. Although no stock was issued to evidence the interest of any of the co-owners of the banks, each per cent of interest has been and will be herein frequently referred to as a share and the co-owners as shareholders. The Young estate passed to eight residuary beneficiaries. Apparently, three of them took their part (3/8) of this interest and made contribution to appellees. The other 5/8 of this 7 11/12 per cent remained in the estate and is the interest involved herein.

The decree in the first phase of the case provided:

"The cause is further continued as to the issue of accounting and determination of the amount and extent of the liability of the defendants who are held herein, and for the appointment of such commissioner or referee as might be determined upon to hear and try the said issues."

. However, when the second phase of the case came on for trial, no commissioner or referee was appointed, apparently because the facts were stipulated. The judgment of the receiver of the two banks against appellees and various other individual shareholders was secured in 1932, and was for $137,513.90. In said case no judgment was secured against the estate of John Young, its administrator, or appellant beneficiaries. In 1933, appellees effected a settlement of said judgment for $86,382.63. This figure was to be reduced by receipts from the collection of the remaining assets of the two banks.

The judgment was not satisfied but was assigned to a trustee for the benefit of appellees. Appellees then proceeded to secure contribution from the other shareholders. Some of

them were insolvent and the amounts collected from some others were less than their proportionate shares. Apparently the receipts from the liquidation of bank assets and from other shareholders were handled by the trustee. Certain payments were made therefrom to some of the appellees to reduce the amounts by which their respective contributions were figured to have been excessive.

I. Appellants assert that the trustee, who is not a party to this suit, is the real party in interest. At the conclusion of the second hearing, they moved for a dismissal of the petition upon the ground that the record showed appellees were not the real parties in interest in that the suit was predicated upon an attempt to enforce contribution to the satisfaction of a judgment which did not belong to appellees. The overruling of said motion is assigned as error.

We need not consider this proposition. The assignment of the receiver's judgment to the trustee for the benefit of appellees was proven in the first phase of the case. Appellants could then have raised the issue or defense about which they now complain. The only issue to be determined in the present phase of the case is the amount of the liability. Appellants' liability to contribute was adjudicated in the first decree. The question as to the right of appellees to maintain the suit in their names is res judicata. Reynolds v. Lyon County, 121 Iowa 733, 741, 96 N. W. 1096, 1099; Smith v. Russell, 223 Iowa 123, 272 N. W. 121.

II. Appellants contend appellees are not entitled to recover because they did not offer to do equity by giving appellants an interest in the judgment obtained against the shareholders by the receiver of the banks. This is another proposition which was not raised in the first phase of the case. Nor was it raised prior to appeal in the present trial.

Appellants were not parties to the receiver's judgment. This suit seeks to compel contribution, not upon said judgment itself, but upon the sum paid to settle the liability of the shareholders, plus expenses and minus receipts from bank assets collected. The judgment was apparently regarded merely as an aid in enforcing contribution.

All the proof was made by stipulation apparently prepared by appellees. It set out in detail the various steps taken by appellees in the process of completing the winding up of the affairs of the banks and adjusting the rights of the shareholders between each other. Some of the matters shown were the interest of each shareholder in the banks, the amount paid by each appellee to satisfy the indebtedness of the shareholders, and the amount, if any, collected from each of the other shareholders. It was shown that some of the shareholders were insolvent and that, except as hereinafter noted, appellees, their trustee, and the receiver of the banks collected from them all amounts possible and used all reasonable efforts and diligence in the collection thereof, and no further amounts were collectible from said parties. It was also shown that some of the appellees, who have contributed less than their respective shares, had other assets out of which contribution could have been enforced. Appellees conceded they should be charged with the amount of said uncollected assets of said shareholders. Appellees were so charged in the decree.

The shareholders above referred to include all the shareholders in the two banks except the John Young estate. In addition to the contributions secured from said shareholders, either in full or to the limit of their respective financial abilities, all the remaining assets belonging to the banks themselves have been collected. The only undisposed of matter was the contribution of the John Young estate. That was settled by judgment and decree here on appeal.

Appellants offered no evidence. There is no charge that appellees did not act with diligence, prudence, and fairness in the foregoing matters. In the trial below there was no suggestion that appellants should be given a share in the shell of the old judgment or that it was of any real value. We think the complaint that appellees failed to do equity is not timely.

III. The Young estate held 5/8 of 7 11/12 per cent or a 4.94 per cent interest in the banks. Appellants contend the limit of their liability for contribution should have been 4.94 per cent of the net indebtedness. In support of this contention it is asserted that the shareholders were only liable severally for their share of the debts. In Daniel v. Best, supra, it was

held that the liability of the owners was more than that of partners under the ordinary partnership agreement in that the business would not cease and the partnership would not be dissolved upon the death of a member or a sale of his interest; that all shareholders were at all times responsible for the obligations of the two banks, and that the estate of John Young was liable for all the indebtedness of the two banks to the same extent that he would have been liable if living. That holding is the law of the case.

The second decree now on appeal requires the Young estate to contribute its (4.94) percentage of the total indebtedness and also a proportionate part of any shortage in the payments made by insolvent shareholders. Thus, the entire debt (minus partial contributions by insolvent shareholders) would be apportioned between the solvent shareholders in proportion to their respective holdings. The requirement that the solvent co-obligors assume the burden of the insolvent ones accords with the general rule stated in Keefer v. Valentine, 199 Iowa 1337, 1342, 203 N. W. 787, 789, in the following language:

"It is well settled that one of several joint obligors who pays the debt is entitled to contribution from the other solvent obligors. His right is to have contribution. All others who are jointly bound with him and are solvent,—not alone the one who pays,—must bear their proportion of the loss resulting from the insolvency of one of them."

See, also, 18 C. J. S. 11; Annotation 64 A. L. R. 224.

However, appellants contend this does not conform to the holding of the trial court in the first decree "that the estate of John Young, deceased, and the representative thereof, be held liable to plaintiffs herein for contribution on the basis of ownership in said estate of five-eighths (5-8) of seven and eleven-twelfths (7 11-12) per cent or seven and eleven-twelfths (7 11-12) shares, of the two said private banks at time of their closing on or about November 2, 1931; and that as between and among the shareholders or co-owners of said private banks, the liability of said estate and its representative is to be measured accordingly."

Appellants assert the former decree fixed the liability at 5/8 of 7 11/12 per cent of the indebtedness. We are unable to agree with this interpretation. The paragraph makes no reference to indebtedness and refers solely to contribution against shareholders. It fixed the liability of the Young estate as between the shareholders upon the basis of its proportionate interest in the bank, which was 5/8 of 7 11/12 per cent.

The effect of this provision was that the contribution was apportioned according to the respective interests of the co-obligors (see 13 Am. Jur. 24) as distinguished from an apportionment which requires each co-obligor to contribute an equal amount (see 13 Am. Jur. 26). However, the rule that the solvent co-obligors must bear their proportion of the loss resulting from the insolvency of some of them is applicable to either of said methods of apportionment. We conclude the method of apportionment used by the trial court in fixing the liability of the Young estate was correct and conforms with the provisions of the first decree.

Appellees were required to employ attorneys to negotiate and procure the compromise settlement of the receiver's judgment against the shareholders. Further legal services were necessary in connection with the liquidation of bank assets received as a part of said settlement. Appellees claimed contribution from the Young estate for its proportionate share of the expenses incurred by them for the services of attorneys in said matters. The evidence showed $12,500 was the reasonable value of said legal services. The trial court reduced this to $8,500 and fixed the proportionate share of the Young estate at $1,524.16. This amount was included in the $16,933.54 judgment against said estate. Appellants assert the court erred in requiring that the Young estate contribute to said expense.

The doctrine of contribution is founded upon the equitable principle that each person subject to a common duty or debt should bear his proper share of the common burden and one person should not be subject to bear more than his just share to the advantage of his co-obligors. Licht v. Klipp, 213 Iowa 1071, 1075, 240 N. W. 722, 724; 13 Am. Jur. 6. Had appellees paid the judgment against the shareholders, which then, with interest, amounted to about $147,000, contribution could have

been enforced against the Young estate for its share of that amount. However, appellees elected to attempt a settlement of the fixed liability and succeeded in settling this liability at a saving of more than $60,000. In so doing, they incurred $8,500 expense for attorneys' fees. That they acted prudently in incurring the expense and making the settlement, which secured a substantial reduction in their own liability as well as that of their co-obligors, is apparent. The expense was not incurred in defending against liability but in reducing the amount of liability already established by the judgment. Under the circumstances, no good reason appears why, in computing the contribution against the Young estate, the expense of negotiating and effecting the settlement should be distinguished from the money paid the receiver for the settlement. We think this expense was properly included in determining the amount of such contribution.

Wherefore, the decree and judgment are affirmed.— Affirmed.

WENNERSTRUM, C. J., and MILLER, GARFIELD, HALE, SAGER, and BLISS, JJ., concur.

STIGER, J., takes no part.