**Thomas H. HUSTON, As State Superintendent of Banking, State of Iowa, Applicant,**

**v.**

**EXCHANGE BANK, A Private Bank, Bloomfield, Iowa; Peter Burchette and Mrs. Nan Burchette Cameron, Respondents.**

**D.W. HARRIS and Vern M. Ball, Appellants,**

**v.**

**Thomas H. HUSTON, Superintendent of Banking, as Receiver of Exchange Bank, Appellee.**

**No. 84–1249.**

Supreme Court of Iowa.

Nov. 13, 1985.

Vern N. Ball, Bloomfield, for appellants.

Mark E. Schantz and Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, and Howard O. Hagen, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

CARTER, Justice.

This appeal concerns the action of the receiver of an insolvent "private bank" denying priority status to the claims of two lawyers seeking recovery of funds deposited as client trust accounts. The district court upheld the action of the receiver. We affirm the judgment of the district court.

D.W. Harris and Vern M. Ball are lawyers practicing in Bloomfield, Iowa. At the time the Exchange Bank of that city was placed in receivership on September 13, 1983, D.W. Harris had on deposit in that bank the sum of $5109.13 in an account entitled "D.W. Harris Client Trust Account." Vern M. Ball had on deposit with the Exchange Bank on that date the sum of $21,330.15 in an account entitled "Ball Law Office—Client Trust Account." It is not disputed that these accounts were established by the deposit of funds which came into the possession of the lawyers through their representation of clients and that the funds so deposited were the property of the clients.

Within the time fixed by court order for the filing of claims in the receivership, both lawyers filed claims with the receiver seeking priority status for the two accounts identified above. They alleged that, in depositing their clients' funds in the Exchange Bank, they were acting under an agreement with the bank that (a) these funds would be kept separate from and not be commingled with the other funds of the bank, and (b) the depositors' claim to such funds would be based on a right of possession in specific property rather than as a general creditor of the bank.

At the hearing held on these claims in the district court, D.W. Harris testified that, as a young lawyer in Bloomfield during the great depression, he had become aware that "many attorneys were badly burned" on account of having deposited clients' funds in banks which had failed. He testified that he had discussed this problem at length with Heinrich C. Taylor, a Bloomfield lawyer, who represented the Exchange Bank and who had been in the banking business himself at one time. Harris testified that Taylor informed him it was possible to establish a client trust account in a manner in which the bank becomes a trustee as well as the lawyer and thereby obligated to keep the funds in such account separate from the general assets of the bank. Harris testified that based upon Taylor's advice, he arranged with R.M. Shields the "operating officer" of the Exchange Bank to establish such an arrangement for Harris's client trust account at that bank. His testimony further indicated that local lawyers Paul Proctor and Vern Schlegel had similar arrangements with the Exchange Bank for their client trust accounts.

Claimant Vern M. Ball testified that he had practiced law in Bloomfield since 1963. He stated that, although he had never personally made any arrangement with the Exchange Bank to hold the funds deposited in his client trust account separate from its other assets, he had assumed from conversations with D.W. Harris that this was the practice of the bank in handling all client trust accounts.

Peter Burchette, president and partial owner of the Exchange Bank at the time of its closing in September of 1983, also testified at the hearing on the claims. He testified that he had been president of the bank for twenty-one months and an employee of the bank for eighteen years. He further testified as follows:

Q. Were you acquainted with R.M. Shields? A. Yes.

Q. To the best of your knowledge or best of your recollection was there any agreement between the bank and Mr. Harris as to the existence of some special account for attorneys' money? A. Roy

Shields and Don did many transactions together. I have no knowledge. I can't say whether there was or whether there wasn't.

Q. You have no recollection of it whatsoever? A. No.

The only evidence presented at the claim hearing concerning whether the Exchange Bank had, at any time, in fact kept the client trust accounts of Harris and Ball separate from its other assets was Harris's testimony that, in preparing the probate inventories in the estate of W.J. Steckel (who owned the Exchange Bank at the time of his death in 1940), and the estate of Belle Steckel (who owned that bank at the time of her death in 1947), he (Harris), as attorney for the estates, excluded the balance of all lawyer's trust accounts with the Exchange Bank from the statement of bank assets includable in the decedents' estates.

After hearing the evidence presented, the district court found because "no evidence was presented as to any agreement with owners of the bank after 1938, it is difficult for the court to conclude a special arrangement existed at the time the funds were deposited." The court denied the claims of both Harris and Ball on the basis that they had failed to establish that their client trust fund accounts enjoyed any special status different from the general depositors at the time of the bank closing.

■ Because these receivership proceedings, including the hearings on the present claims, were docketed in equity and tried by equitable proceedings in the district court, our review on appeal is de novo. Iowa R.App.P. 4; *Wolf v. Murrane*, 199 N.W.2d 90, 100 (Iowa 1972).

The legal principle upon which appellants' claims of priority status is based was stated as follows in *Andrew v. Union Savings Bank & Trust Co.*, 220 Iowa 712, 715, 263 N.W. 495, 497 (1935):

The applicable rules of law are well settled and do not appear to be seriously in dispute between the parties. It is well established that in the ordinary transaction where a depositor puts money in a bank, the money becomes the bank's money and the bank owes the depositor a debt. The relation of debtor and creditor is created between the bank and the depositor. Under such circumstances, there is no preference in the payment of a claim for such deposit when the bank becomes insolvent and goes into receivership. A different rule applies where money is merely left with the bank under an arrangement with the bank that the money is to be used by the bank for some special purpose as, for example, to turn over to a particular person or to pay a particular debt. In all such cases the money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own. Such a deposit is said to be a special deposit. No relationship of debtor and creditor is created between the bank and the person making the deposit in such a transaction. Where the bank fails in such a situation, the owner of the fund has a right to claim it and to receive preference in payment of it where it passes into the hands of the receiver.

Other cases which agree with these conclusions are *Miller v. Andrew*, 206 Iowa 957, 959, 221 N.W. 543, 545 (1928) and *Dugan v. Security Savings Bank*, 205 Iowa 171, 173, 217 N.W. 831, 832 (1928).

■ After stating the principles established in the quoted portion of the *Andrew* decision, appellants argue that, if it has been established that there was an agreement with the bank in 1938 to segregate lawyers' client trust funds, "it is not incumbent upon either [appellant] to establish that the Exchange Bank did, in fact, segregate these funds." We disagree somewhat with the foregoing contention. If a bank has agreed to segregate funds and not done so, then the depositor's recourse is a claim for conversion. Under ordinary circumstances, that claim would be a general creditor's claim.

■ Our decisions have alleviated the harshness of this situation somewhat by recognizing that, where the tracing of trust assets involves cash, "it is not incumbent on plaintiff to identify the particular funds, for, as money has no earmarks, this would be practically impossible." *Hanson v. Roush*, 139 Iowa 58, 60, 116 N.W. 1061 (1908). This recognition has caused some relaxing of the burden placed upon a party called upon to trace cash assets. We have said that, "if property impressed with a trust has been 'traced' to the possession of the trustee, the burden is then upon him or his receiver to show that it did not result in augmentation of the estate." *Andrew v. State Bank*, 205 Iowa 1064, 1070, 217 N.W. 250, 253 (1928).

In an apparent effort to fit themselves within the rule last announced, appellants argue that, "while it is true the bank changed hands four times—from W.J. Steckel to Belle Steckel and Josephine Burchette, to Edward Burchette, and finally to Peter Burchette and Nan Burchette Cameron, it is presumed these trust funds were properly transferred from one owner to the next and retained their trust character." The foregoing argument is good only to the extent that it has been shown the funds in the two client trust accounts on September 13, 1983, had at some time been impressed with a trust. Unfortunately, from appellants' standpoint, the funds on deposit in these two accounts on the date the bank closed cannot be traced back to 1938. Of the $5109.13 in the D.W. Harris client trust account, $4130 had been on deposit for less than two weeks. The balance of the client trust account of the Ball law firm came into the record by way of stipulation, and the relevant deposit dates do not appear. The account cannot reach back to 1938, however, because Ball did not practice law prior to 1963.

■ We are not suggesting that, in order to establish the kind of special account status under which the bank becomes a trustee, a new agreement must be made at the time of each deposit. It is necessary, however, to show that, at the time the deposits sought to be accorded priority status were made, some agreement with the bank is then in force under which deposits of that general classification will be accorded such status. We find that appellants' evidence falls short of establishing this in the present case.

■ The record shows that, at the time D.W. Harris claims to have established his trust account agreement with R.M. Shields in 1938, the bank was owned by W.J. Steckel. He died in 1940, and the ownership of the bank succeeded to his wife, Belle Steckel. Belle Steckel died in 1947, and, since that time, appellants concede that ownership of the bank has changed hands three more times. The Exchange Bank was never a corporation. We believe that our cases make it clear that, with respect to an unincorporated bank, one contracting with the bank is in fact contracting with the owners of the bank. *See Wagner v. Golden*, 231 Iowa 718, 721, 2 N.W.2d 53, 55 (1942); *Fidelity and Casualty Co. of New York v. Bank of Plymouth*, 218 Iowa 1083, 1089-90, 255 N.W. 713, 717-18 (1934); *Greene County v. City Bank of Jefferson*, 196 Iowa 1164, 1167-68, 195 N.W. 3, 6 (1923). As a result, we agree with the district court's findings and conclusions that appellants have failed to establish that they had the same agreement with the bank at the time of the deposit of the funds for which claim is now being made that is claimed to have been negotiated with R.M. Shields forty-five years earlier. We affirm the judgment of the district court.

AFFIRMED.