Wilford **ADRIAN**, Appellant,

v.

**STATE of Iowa**, Appellee.

No. 89–265.

Supreme Court of Iowa.

April 18, 1990.

Rehearing Denied May 23, 1990.

Vern M. Ball, Donald W. Harris, Keith A. Kreiman, John B. Martin, Charles K. Pettit,

Stephen A. Richardson, and R. Kurt Swaim, Bloomfield, for appellant.

Thomas J. Miller, Atty. Gen., John R. Perkins, Deputy Atty. Gen., and Shirley A. Steffe, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Plaintiffs, depositors of a now defunct bank, brought this action against the State of Iowa and its regulatory agencies to recover losses they suffered when the bank failed. The suit is premised on the plaintiffs' claim that the State failed in a duty to regulate the bank. The appeal is from a trial court ruling which granted summary judgment for defendants. We affirm.

This is still another example of litigation occasioned by the collapse in 1983 of the Exchange Bank of Bloomfield, Iowa (the bank). We have previously explained that the bank was a vestige of a bygone era. In former times banks were largely unregulated, and the unsuspecting public often paid a terrible price for misjudging their solvency.

The Exchange Bank of Bloomfield was a last of its kind, unregulated because it existed as a private bank in 1919. In *Tubbs v. United Central Bank, N.A.*, 451 N.W.2d 177, 179 (Iowa 1990), we explained:

> Exchange Bank was founded in 1871 by Amos Steckel. In 1919, the Iowa legislature passed a law requiring all banks to be chartered and regulated but provided an exception or "grandfather" provision for existing banks. Exchange Bank was one of them. At the time it closed, Exchange Bank was one of only four such unregulated banks. These banks had no statutory requirements with respect to financial disclosure, capital requirements, lending limits, restrictions on loans to related parties, loan documentation, or outside examinations. The present case is a vivid testimonial to the need for state regulation of banks.

Steckel's son, W.J. Steckel, succeeded his father and continued the operation of the bank until his own death in 1940. The assets of the bank then passed by intestate succession to W.J.'s wife, Belle, and their daughter, Josephine. Josephine had married Edward Burchette in 1935. Edward became president of the bank when W.J. died. Belle died intestate in 1947, and her interest in the bank passed to Josephine. Josephine died testate in 1951. Her will left her entire estate, including the assets of the bank, to her husband, Edward. In January of 1981 Edward assigned and transferred ownership of the bank to his children, Peter Burchette and Nan Burchette Cameron. At that time a verified statement of change of ownership was filed with the Davis County recorder. Peter and Nan operated the bank until they tendered it to the superintendent of banking in September of 1983.

Throughout this entire period the banking superintendent always took the position that, because the bank was a private one, the superintendent had no authority over it. Beginning in 1976, however, the securities division of the Iowa insurance department took the view that the bank's long-term certificates of deposit were securities, subject to the registration requirements of Iowa Code chapter 502 (1989). Ultimately neither the banking superintendent nor the commissioner of insurance took any action concerning the bank until the bank requested supervision by the department of banking on September 5, 1983. On September 13, 1983, the superintendent of banking concluded the bank was insolvent and closed it.

With the collapse of the bank various depositors attempted in diverse ways to recoup their losses. In *Houston v. Exchange Bank*, 376 N.W.2d 624 (Iowa 1985), we rejected a contention by two attorneys that they had established an agreement to maintain client trust accounts as specific property. *Id.* at 627. In *Tubbs*, 451 N.W.2d at 185, we imposed an equitable lien in favor of the depositors on farmland owned by the bank's owners. The present case is an ingenuous attempt to recoup losses from the State on the theory that this unregulated bank should have been

regulated. Plaintiffs have three contentions.

I. Plaintiffs first allege the bank lost its status as a "private bank" when W.J. Steckel died in 1940. They say this was because from 1940 to 1983 the bank was owned and operated by Belle Steckel, Josephine Steckel, Edward Burchette, Peter Burchette and Nan Burchette Cameron, none of whom were engaged in the business of banking in Iowa prior to April 19, 1919. Iowa Code section 524.103(16) defines a private bank as:

an individual, partnership or other unincorporated association engaged in the business of banking to the extent provided for and limited by sections 524.1701 and 524.1702 and which was lawfully engaged in the business of banking in this state prior to April 19, 1919.

The Code does not specifically define a "private banker." Plaintiffs argue it can therefore be implied that a private banker is one who was engaged in banking either as an individual or as a member of a partnership or unincorporated association prior to April 19, 1919. They concede that until 1940 the bank was a "private bank," but contend that the bank ceased to be a private one because none of the persons who operated the bank after 1940 fell within the protection of the grandfather clause of the Code.

Plaintiffs claim support for their position in our opinion in *Houston.* The *Houston* plaintiffs sought the special status for their trust deposits on the basis of an agreement they asserted to have been made forty-five years earlier with bank officials. In rejecting their claim we said "[w]e believe that our cases make it clear that, with respect to an unincorporated bank, one contracting with the bank is in fact contracting with the owners of the bank." *Houston,* 376 N.W.2d at 627. We said the *Houston* plaintiffs had "failed to establish that they had the same agreement with the bank at the time of the deposit of the funds for which claim is now being made that is claimed to have been negotiated ... forty-five years earlier." *Id.* The present plaintiffs contend the quoted language means that a private bank will not be treated as a continuous entity when ownership changes. We think otherwise.

Our *Houston* decision rested on a holding that the two attorneys could not establish they still had an agreement in effect after forty-five years. We in no way intimated that the bank had lost its "private bank" status.

The definitive case on the question is *Daniel v. Best,* 224 Iowa 1348, 279 N.W. 374 (1938). *Daniel* involved two private banks which were owned by the shareholders of a third state-regulated bank. As individual shareholders died their stock would pass by inheritance to others who in some cases sold their stock to third parties. All three banks were forced to close in 1938. The receiver appointed for the private banks brought an action against the shareholders of the regulated bank, claiming the shareholders, because they were in effect the owners of the private banks, were responsible for the debts of the private bank. We quoted with approval the language of the trial court as follows:

This court finds as a matter of law and fact, under the plan of organization of ... private banks and their method of operation, ... that said banks *were continuous legal entities, not terminated by the death of a member or shareholder;* that they were formed so as to *have perpetual succession,* at least as long as the Traer State Bank [the regulated bank] might continue to exist, or until some other plan of ownership might be devised; that *on the death of a member or shareholder, his shares or interest passed to his estate or its representatives, without any change in the rights or liabilities pertaining to the ownership thereof; that the plan and method of operation of said banks, and every element thereof, automatically became part of the contract of every member or shareholder on his becoming such.* These were the clear and unambiguous terms to which all shareholders in the private banks bound themselves, and of course all shareholders were at all times

responsible for the obligations of the two banks.

*Id.* at 1360–61, 279 N.W. at 381 (emphasis added in *Daniel*).

The statute interpreted in *Daniel,* Iowa Code section 9151 (1935), was essentially the same as present section 524.1701. The trial court was correct in holding that the bank retained its private status. Plaintiffs' contention to the contrary is without merit.

II. The status of the bank as a private one is fatal to plaintiffs' other two contentions. They contend the banking department and the securities division of the office of the insurance commissioner owed them a duty with regard to the bank. Plaintiffs point to several statutes and administrative rules which call for regulation of banks. Citing *Hildenbrand v. Cox,* 369 N.W.2d 411 (Iowa 1985), plaintiffs argue a person owes a duty to act for the protection of others if that person has a "special relationship" to the other person. *Hildenbrand,* 369 N.W.2d at 415. Plaintiffs assert *Hildenbrand* is authority that Restatement (Second) of Torts sections 314A, 315, 319 and 320 established a common-law duty owed by government agencies to protect members of the public. The rule is, however, carefully circumscribed. In *Fitzpatrick v. State,* 439 N.W.2d 663, 667 (Iowa 1989), we pointed out that "the absence of a special relationship between the public officials and the injured parties [will] defeat recovery...."

We need not speculate on plaintiffs' assertion that the relationship between the banking superintendent and customers of a regulated bank is a special one. It is enough to say here that there is by statute *no* relationship when the bank is a private one.

III. The parties also dispute the effect on this litigation of the discretionary function exception to the tort claims Act. *See* Iowa Code § 25A.14(1) (tort liability not imposed for claims based on discretionary function or duty). Plaintiffs argue that the failure to regulate is a failure to exercise a duty imposed by the General Assembly, a matter over which state agencies have no discretion. But again, the status of the

bank as a private one deprives plaintiffs of a factual basis for urging this theory. This is because the General Assembly expressly exempted state agencies from regulating private banks.

AFFIRMED.