ROLFE O. WAGNER, Appellee, v. ROSS GOLDEN, Appellant, et al.. Appellees.

No. 45655.

FEBRUARY 10, 1942.

REHEARING DENIED AUGUST 11, 1942.

Cosson, Stevens & Cosson, for appellant.

Gillespie & Gillespie, for appellees.

MILLER, J.—Plaintiff's petition was filed October 1, 1938, and as amended asserts that about 1902 a partnership was organized and did a general banking business at Ankeny, Iowa, under the name of the Bank of Ankeny until the early part of 1933, when it was taken over by the Superintendent of Banking under the provisions of Senate File 111, Acts of the 45th General Assembly; at that time plaintiff and the defendants were the partners of said private bank and were individually liable for the obligations of the partnership; defendant Golden owned a one twenty-fifth interest in the partnership; a reorganization of the bank was undertaken by the Superintendent of Banking with the approval of the governor; agreements were secured from the depositors; the Ankeny State Bank was organized, acquired fifty per cent of the assets of the old bank and assumed liability for fifty per cent of its deposits; the other fifty per cent of the assets were assigned and conveyed to trustees for the depositors; as a part of this reorganization, the partners in the old bank were required to pay $45,000, which sum was paid, but defendant Golden did not make any contribution thereto; an accounting of the affairs of the partnership was tendered for the purpose of determining the contribution which should be made by defendant Golden in the liquidation of its liabilities. The prayer of the petition was that an accounting be had of the affairs of the partnership and contribution be enforced against

defendant Golden in favor of the other partners, judgment to be entered in favor of plaintiff for himself individually and on behalf of the rest of the partners other than Golden.

Relief similar to that sought against the defendant Golden was also sought originally against one O. R. Canfield who was another partner and was cashier of the private bank when it closed. It appears from the record that Canfield is a nonresident and insolvent and that the litigation has been abandoned as against him.

The defendants, other than Golden and Canfield, filed answers, admitting the allegations of the petition as amended and asserting that said defendants had authorized plaintiff to institute the action in their behalf, prayed for an accounting and contribution in favor of plaintiff and said defendants and for judgment in favor of plaintiff for and on behalf of said defendants. The attorneys who appear for said defendants also represent the plaintiff herein.

Jurisdiction was obtained against the defendant Golden, who is a nonresident, by attachment of his property. He filed an answer wherein he purported to appear "solely *in rem* and not personally". He admitted that he had been and still is the owner of a one twenty-fifth interest in the private bank. He stated, however, that the "debts and obligations of Bank of Ankeny have been paid and discharged and that they have been paid, discharged and satisfied from the liquidation of the assets of Bank of Ankeny without the necessity of resort to the personal obligations and responsibilities to the members thereof, and that there is no basis in law or in equity for the enforcement of any personal liability against this defendant in order to satisfy the debts of said Bank of Ankeny, and that there is no necessity or ground for contribution between this defendant and any of the other members of said Bank of Ankeny." He further asserted that plaintiff and the other members of the Bank of Ankeny had not paid their subscriptions to its capital in full and "that in the event a final accounting of the assets of Bank of Ankeny should disclose that its assets were insufficient to meet its obligations that then and in such event the first resort should be to said unpaid subscriptions to the capital of said Bank of Ankeny." He further

asserted that some of the partners were indebted to the private bank when it closed and that the accounting should charge such members the full amount of their personal obligations with interest. He asserted that some of the partners conspired among themselves and with others and pursuant thereto appropriated assets of the private bank to their own use. He also asked for an accounting from partners who were guilty of mismanagement for improper personal gains from their wrongful acts.

The cause proceeded to trial before the court. After quite a little testimony had been taken, the court, over the objection of defendant Golden, appointed one Oscar Strauss referee to hear and determine an accounting herein. Such an accounting was thereafter heard by Mr. Strauss. He made a very comprehensive report, both as to questions of fact and propositions of law, whereby he fixed the amount of contribution of defendant Golden at $860.85 with interest at five per cent from July 1, 1933, to May 1, 1940, aggregating the sum of $1,140.70. Defendant Golden filed elaborate exceptions to the report of the referee. On October 25, 1940, the court approved the report of the referee with slight modifications and entered decree, fixing the amount of contribution of the defendant Golden at $859.08 with accrued interest at five per cent, amounting to $310.79, and entering judgment against him in the sum of $1,169.87, with interest thereon at five per cent and for the costs. From such decree defendant Golden appeals.

I. Appellant's first proposition is that plaintiff cannot recover any sum herein because the record does not show that plaintiff paid anything on behalf of appellant. The difficulty with the contention lies in the fact that appellant assumes that plaintiff's cause of action is based solely upon his personal rights against appellant. This is not true. Plaintiff sues on behalf of himself individually and also on behalf of all the defendants who are appellees herein. Such appellees adopted the allegations of plaintiff's petition and joined in the prayer thereof. So the right to recover herein depends upon appellant's obligations to all the appellees, those who are named defendant as well as the plaintiff.

The record is undisputed that the private bank was taken over by the Superintendent of Banking under the broad powers conferred upon him by Senate File 111, Acts of the 45th General Assembly. The personal liability of the partners in the private bank was clarified through a reorganization of the bank under the direction of the Superintendent of Banking. The immediate obligation of the partners was fixed at $45,000 and any additional obligation was deferred. The authority to so reorganize the bank appears to be conferred by said Senate File 111 and does not appear to be seriously challenged by appellant. As a result of such reorganization appellees, plaintiff and defendants paid $45,000. Appellant's proportion of $45,000 would be $1,800. He paid nothing. His share was paid by the appellees. He is legally liable to reimburse them after an accounting. Because the plan was successful, there are credits to which he is entitled. The accounting was necessary to determine them. But, unless the credits exceed $1,800 he is liable for some amount. There is no merit in the first proposition.

II. Appellant's second proposition is that partnership assets must be exhausted before resort can be had to the personal liability of the partners. The cases upon which appellant relies were all decided before the adoption of Senate File 111 aforesaid and none of them presents a question analogous to that which is before us. Also, in the accounting which was had, full credit appears to have been given for the disposition of all the partnership assets. There is no merit in this proposition.

III. Appellant's third proposition is that he is not liable because the Superintendent of Banking required only $45,000 from the partners and more than that has been paid. There is no merit in this proposition. It is true that only $45,000 was required. This sum was paid by partners owning eighteen twenty-fifths interest in the bank. Thereafter some $9,375 was paid by other partners who did not contribute originally. The partners who paid the original $45,000 were entitled to participate in the contribution of $9,375. Since appellant has paid nothing, he is not entitled to participate therein and is still liable for his share. Since his contribution is determined on the

basis of only $45,000 having been paid, he has no basis for any complaint.

IV. Appellant's fourth, fifth and sixth propositions complain of the court's refusal to allow him credit for a profit which plaintiff made in dealing with certain assets that had belonged to the partnership. The contentions are without merit.

The record establishes that, in the reorganization of the bank, fifty per cent of the assets was acquired by the Ankeny State Bank and the other fifty per cent was assigned and conveyed to trustees for the depositors. On October 23, 1937, the plaintiff purchased at a private sale from the Ankeny State Bank as liquidating agent for the trustees for the depositors the tail-end assets for $58,325.37. At the time of the trial, he had made a profit of $8,500 in the liquidation of these assets and he testified that he expected to ultimately realize a profit of $12,000. The sale price of the tail-end assets was sufficient to pay the balance of the trust certificates of the depositors in full. Appellant contends that the excess over and above that necessary to pay the depositors in full belonged to the partners and that the purported sale was no sale at all but a conversion by plaintiff of partnership property. He also contends that, since plaintiff had been president of the private bank, as well as president of the Ankeny State Bank, he occupied a position of trustee as to appellant and could not deal in trust property.

The position of the referee on this proposition is stated as follows:

"This record then discloses: (1) That the bank was insolvent; (2) That a sale of its assets was required; (3) That the partnership was dissolved; (4) That from and after the creation of the trust fund out of the segregated assets, such assets were equitably owned by the depositors of the Bank of Ankeny.

"In that situation the rule is that none of the partners is disqualified from purchasing the partnership assets at a sale not made by the purchasing copartner, and that if the sale was fairly made and there was no fraud or collusion therein the transaction cannot be questioned by other partners. Wagner did not buy from himself as a copartner, but from trustees appointed and serving under and by virtue of election by deposi-

tors who were the owners of this fund. Neither plea nor proof of any kind questions or assails either the validity or fairness of the sale, nor charges nor supports a charge of fraud or collusion. Both principle and authority support this rule.''

The attack here made upon the sale of the tail-end assets by the agent for the trustees for the depositors to the plaintiff Wagner is a collateral attack. The sale was made over four years after the private bank had failed and had gone out of business. Instead of winding up the affairs of the insolvent partnership through a receiver, the Superintendent of Banking, acting pursuant to Senate File 111 aforesaid, reorganized the bank without a receiver. The deficiency for which the partners were liable was estimated to be $45,000. This sum was paid by a majority of the partners. Under the plan of reorganization all of the partners were eventually relieved of personal liability by the payment of said $45,000, except that those who failed to contribute to the payment thereof were liable for their just contribution to those that made payment. The assets of the partnership were divided—half of them to the Ankeny State Bank, the other half to the trustees for the depositors. Thereafter, the partnership had no assets. Plaintiff Wagner was not a trustee for the depositors. He had no relation to the property as a former partner. He violated no duty toward appellant in undertaking to purchase the tail-end assets held by the trustees for the depositors. The findings of the referee that there was no collusion or fraud are supported by the evidence. We find no merit in appellant's contentions.

■ V. Appellant's seventh proposition complains of the fact that appellant was charged with interest and costs. He complains of the fact that his liability was arbitrarily fixed as of July 1933. He contends that it could not be determined until the affairs of the partnership had been wound up. While the net amount due from him could not be then determined, the basis for his liability is the fact that in July 1933 a majority of the partners paid $45,000 to discharge the personal liability of all the partners and appellant's liability is predicated upon the contribution which he owes to those who made payment in his behalf at that time. We find no merit in this proposition.

■ VI. Appellant's eighth and final proposition complains

of the order of reference, asserting that the court abused its discretion in causing such expense to be incurred and charged to appellant. In view of the issues presented herein and the nature of the evidence necessary to determine them, we hold that there was no abuse of discretion which would warrant interference by us.

Since we find no merit in the contentions of appellant, the decree is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.